UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Dennis G. Huckins

    v.                                  Civil No. 11-cv-106-JD

Mark McSweeney and
Town of Sanbornton

ORDER CERTIFYING QUESTION
TO THE NEW HAMPSHIRE SUPREME COURT

    Dennis Huckins sued Officer Mark McSweeney and the Town of Sanbornton, New Hampshire, alleging, among other claims, a claim for battery against both defendants. Sanbornton moved for summary judgment, arguing that it is statutorily immune from liability for Huckins's battery claim under N.H. Rev. Stat. Ann. ("RSA") 507-B:2 and RSA 507-B:5. Huckins does not dispute that RSA 507-B:2 and RSA 507-B:5 give Sanbornton municipal immunity but argues that the statutes are unconstitutional because they preclude entire classes of tort victims from recovering in violation of Part 1, Article 14 of the New Hampshire Constitution.

    Immunity under RSA 507-B:2 and RSA 507-B:5 would be determinative of Huckins's battery claim against Sanbornton. The invocation of immunity by Sanbornton and Huckins's response require a determination of whether immunity provided by the

statutes violates the New Hampshire Constitution.[1] No controlling precedent exists on that issue. Pursuant to New Hampshire Supreme Court Rule 34, the court certifies the question to the New Hampshire Supreme Court.

## I. STATEMENT OF FACTS

On the evening of January 20, 2009, Dennis Huckins and his friend, Gregory Gagnon,[2] were driving in Sanbornton, New Hampshire, on their way to go snowmobiling. Huckins and Gagnon each drove his own truck, with Huckins following Gagnon. Gagnon's truck was towing the snowmobiles.

While driving on New Hampton Road, Officer Mark McSweeney observed that the taillights on the trailer that Gagnon was towing were not working. He pulled Gagnon over to the side of the road to conduct a routine traffic stop. Huckins, seeing that Gagnon had been stopped by a police officer, also pulled over, stopping about one hundred and fifty feet behind McSweeney's police cruiser.

---

[1] In this case, Huckins does not contend that RSA 507-B:2 and RSA 507-B:5 should be construed in a matter that would not provide immunity to Sanbornton in the circumstances of this case. Instead, Huckins agrees with Sanbornton's interpretation of the statutes. Therefore, an issue of statutory construction has not been raised here.

[2] Gagnon's wife, Denise, was also present on the trip.

Gagnon told McSweeney that Huckins was following him on their trip.  McSweeney walked back to Huckins's truck and asked Huckins to pull in front of Gagnon's truck.  Huckins said that he would.  McSweeney noticed that Huckins's eyes were glassy, but did not ask him any questions.  After speaking with Huckins, McSweeney returned to his police cruiser.

Huckins pulled his truck out in front of Gagnon's truck as McSweeney had directed him to do.  He then got out of his truck and walked back to Gagnon.  Gagnon and Huckins decided that Huckins would drive ahead to the General Store and fill up some gas cans for the snowmobile trip.  Huckins took the gas cans from Gagnon's truck, returned to his truck, and drove to the General Store.

McSweeney eventually returned to Gagnon's truck and noticed that Huckins was no longer at the scene.  He asked Gagnon where Huckins had gone.  Gagnon told him that Huckins had driven ahead to the General Store to get gasoline.  McSweeney gave Gagnon a warning for the broken taillights, and Gagnon drove off to meet Huckins at the General Store.

Shortly after Gagnon arrived at the store, McSweeney arrived as well.  The store was closed and it was relatively dark.  The only people there were the Gagnons, Huckins, and McSweeney. Huckins was out of his truck and his truck was still running.

McSweeney approached Huckins and Gagnon, who both walked toward him when he pulled in.  McSweeney asked Huckins if he could speak with him.  Huckins agreed and they walked to McSweeney's police cruiser.

McSweeney asked Huckins whether he had consumed alcohol that day.  Huckins said that he had not and that he did not ever drink alcohol.  McSweeney again noticed that Huckins's eyes were glassy and asked Huckins if he could conduct a field sobriety test.  Huckins consented.  McSweeney's report noted that at this time, "Huckins appeared nervous and worried and was making poor eye contact."

Before performing the field sobriety test, McSweeney went over to Huckins's truck to record his license plate and radio it to dispatch.  While at the truck, McSweeney noticed that Huckins was speaking to someone on his cell phone.  McSweeney's police report noted that "Huckins was pacing and had his head down appearing anxious."

McSweeney then walked over to Gagnon and told him that he had noticed at the initial traffic stop that Huckins's eyes were glassy.  McSweeney asked Gagnon if he knew whether Huckins had consumed alcohol that day.  Gagnon told McSweeney that he did not think Huckins had consumed any alcohol that day and that Huckins

had not consumed any since the two had gotten together earlier that evening.  McSweeney thanked Gagnon and returned to Huckins.

McSweeney began conducting a horizontal gaze nystagmus ("HGN") test on Huckins.  The HGN test involved Huckins following a pen with his eyes without moving his head.  McSweeney performed the exercise multiple times, but Huckins was unable to follow McSweeney's directions.

Before completing the field sobriety test, Huckins began to walk away toward his truck.  McSweeney put his hand on Huckins's arm and advised him not to walk away so that he could determine Huckins's sobriety.  Huckins acquiesced and began walking toward the cruiser.  When they arrived back at the cruiser, Huckins then began running back towards his truck, the engine of which was still running.  McSweeney yelled "stop" numerous times.  Huckins continued running toward his truck.  Gagnon yelled, "Dennis, what are you running for?"  Huckins did not answer.

McSweeney began to radio dispatch to request another unit. When Huckins was near his truck, McSweeney stopped talking to dispatch mid-sentence and deployed his taser.  The taser prongs struck Huckins in the back and he fell to the ground, injuring his right elbow.

McSweeney states that he deployed his taser only once when Huckins was running by his truck.  Gagnon contends that he saw

5

McSweeney deploy the taser twice - once when Huckins was running and again when Huckins tried to get on his hands and knees. Huckins's complaint alleges that McSweeney "activated the Taser multiple times." In his deposition, Huckins stated that the taser felt like one long electric shock.

Huckins was subsequently placed under arrest and taken to the police station.

## II.  QUESTION OF LAW

Huckins sued McSweeney and Sanbornton, alleging a claim under 42 U.S.C. § 1983 that McSweeney violated his Fourth Amendment rights, a claim for battery against McSweeney and Sanbornton, and a claim for malicious prosecution against Sanbornton. The defendants moved for summary judgment and Huckins objected. The constitutional challenge arises out of Huckins's objection to that part of the defendants' summary judgment motion that asserted immunity from Huckins's claim for battery against Sanbornton.

Sanbornton argues that it is statutorily immune from liability for McSweeney's battery under RSA 507-B:2 and RSA 507-B:5. RSA 507-B:5 provides that "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or

6

as is provided or may be provided by other statute." RSA 507-B:2 provides that a municipality may be liable for negligence "arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises . . . ." Based on the interaction of those statutes, Sanbornton contends that it is immune from liability from Huckins's battery claim.

Huckins does not dispute that RSA 507-B:2 and RSA 507-B:5 together provide Sanbornton immunity from his battery claim. Huckins argues, however, that RSA 507-B:2 and RSA 507-B:5 are unconstitutional because they preclude entire classes of tort victims from recovering in violation of Part 1, Article 14 of the New Hampshire Constitution.[3] Huckins also contends that the constitutionality of municipal liability generally is in doubt and relies on <u>Opinion of the Justices</u>, 126 N.H. 554 (1985), and <u>City of Dover v. Imperial Cas. & Indem. Co.</u>, 133 N.H. 109 (1990).

---

[3]Part 1, Article 14 of the New Hampshire Constitution provides: "Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

7

### III.  CERTIFIED QUESTION

The court certifies the following question to the New Hampshire Supreme Court:

> Whether RSA 507-B:2 and RSA 507-B:5 are constitutional under Part 1, Article 14 of the New Hampshire Constitution, to the extent they prevent recovery for Plaintiff's claim for civil battery and damages against the Town of Sanbornton under a theory of *respondeat superior*.

SO ORDERED.

                                                                    /s/ Joseph A. DiClerico, Jr.
                                                                    Joseph A. DiClerico, Jr.
                                                                    United States District Judge

March 14, 2013

cc:  Charles P. Bauer, Esq.
     Samantha Dowd Elliott, Esq.
     Jason R.L. Major, Esq.